NEHLS, Appellee,

v.

QUAD–K. ADVERTISING, INC., Appellant.*

[Cite as *Nehls v. Quad–K. Advertising, Inc.* (1995), 106 Ohio App.3d 489.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67358.

Decided July 3, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1462, 656 N.E.2d 1298. A motion for reconsideration was granted and a discretionary appeal allowed in (1996), 74 Ohio St.3d 1491, 658 N.E.2d 788. A joint motion to remand to implement settlement was granted in (1996), 75 Ohio St.3d 1475, 663 N.E.2d 1302.

490

*Betty D. Montgomery,* Attorney General, and *Marilyn Tobocman,* Assistant Attorney General, for appellee.

*William M. Crosby,* for appellant.

NUGENT, Judge.

This is an appeal brought pursuant to R.C. 4112.061 from a decision of the Cuyahoga County Common Pleas Court which affirmed the order of the Ohio Civil Rights Commission. The commission, by its order, found in favor of appellee, Arleen M. Nehls, on claims of sexual harassment and constructive discharge against Abe Giterman, owner and president of appellant, Quad–K. Advertising, Inc.

I

The facts giving rise to this appeal are adduced from the record and the briefs of the parties.

Abe Giterman was the president and owner of Quad–K. Advertising, Inc. At the time in question, Quad–K. was a small advertising agency with its sole client being Silverman's Department Stores. Appellee worked for appellant, as an administrative assistant, from August 1988 through March 1989. During the time of Nehls's employment, three other people, Lee Ann Cicigoi, Robert Prough and Andy Braddish, did advertising and illustration work for Quad–K. Each of these persons submitted affidavits characterizing his or her employment status at Quad–K. as that of independent contractor.

Nehls alleges that during the course of her employment with Quad–K, Giterman created a hostile environment through a pattern of sexual comments, touching and innuendo, which led to a hostile work environment. This work environment forced Nehls to resign her position with Quad–K. in March 1989.

On April 4, 1989, Nehls filed a charge with the Ohio Civil Rights Commission. On January 22, 1991 a hearing was held on appellant's motion to dismiss. The hearing examiner expressly denied appellant's motion to dismiss for lack of personal jurisdiction, finding that Quad–K. satisfied the "four or more" employee requirement of R.C. 4112.01. Thereafter, on May 9, 1991, the matter was heard on the merits before Franklin Martens, a commission hearing examiner.

During this hearing, the hearing examiner heard the testimony of Nehls as well as that of Cicigoi, Prough and Braddish. The testimony of these witnesses reveals the following:

Cicigoi worked thirty-two to forty hours per week, performing all of her duties at the Quad–K. office. Her equipment and materials were provided by appellant. Moreover, the income she received from appellant was her primary source of income.

Both Prough and Braddish worked on a "standby" project basis with appellant. Their work would vary from "nothing to real busy." Neither man performed any

work for any other advertising agency. Both men would perform some of their work at home as well as at the offices of Quad K. In addition, appellant was the primary source of income for both men.

On December 31, 1991, hearing examiner Martens issued his findings of fact, conclusions of law and recommendations. Martens revisited the jurisdictional issues applying the "economic realities" test defined by the Sixth Circuit Court of Appeals in *Armbruster v. Quinn* (C.A.6, 1983), 711 F.2d 1332. Applying this test, the hearing examiner found both Giterman and Nehls to be employees of Quad–K. Further, the hearing examiner found that Cicigoi, Prough and Braddish were also employees of Quad–K. for purposes of determining jurisdiction pursuant to R.C. 4112.01(A)(2).

In addition to this finding, the hearing examiner found the following:

"The Commission proved that Complainant was subjected to a hostile and offensive working environment. She was subjected to unwelcome sexual advances and requests for sexual favors. Although there were only two occasions where she was specifically asked for sexual favors, these incidents, coupled with the verbal pattern of harassment (the hand gestures, leering, and dirty jokes), were sufficient to satisfy the Commission's definition of sexual harassment."

As a result of these findings, the hearing examiner issued the following recommendation:

"1. The Commission orders respondent to cease and desist from any and all discriminatory practices in violation of Chapter 4112 of the Revised Code; and

"2. Within ten days of receipt of the Commission's Final Order, Respondent shall submit to the Commission a certified check payable to Complainant for the amount Complainant would have earned had she been employed by Respondent on March 8, 1989 through March 8, 1991, including any raises Complainant would have received, less Complainant's interim earnings, plus interest at the maximum rate allowable by law."

On February 18, 1993, appellant filed a petition for judicial review of the commission's order to the Court of Common Pleas of Cuyahoga County pursuant to R.C. 4112.06(A). In its brief before the trial court, the appellant again argued that Quad–K. lacked the sufficient number of employees to subject it to jurisdiction pursuant to R.C. 4112.01(A)(2).

On April 26, 1994, the trial court issued the following ruling:

"This Ct. finds that Arleen Nehls is an 'employee' under R.C. 4112.01(A)(3) and that Quad–K is an 'employer' under R.C. 4112.01(A)(2). This court further finds that the findings of the Ohio Civil Rights Commission are supported by reliable, probative and substantive evidence and are hereby affirmed."

On May 26, 1994, the appellant timely appealed the trial court's decision, raising the following assignments of error for our review:

"I. The Court of Common Pleas erred in affirming the Ohio Civil Rights Commission's findings of fact and conclusions of law which were unsupported factually or by any applicable statute.

"II. The Court of Common Pleas erred in affirming the finding of the commission that it had jurisdiction over the subject matter of this complaint when Mr. Giterman dba Quad K Advertising had four (4) or fewer employees thereby lacking the number employees sufficient to subject him to the commission's subject matter jurisdiction.

"III. The Court of Common Pleas erred in not vacating the jurisdiction of the commission *ab initio* for proceeding against a non-existent business entity, Quad K Advertising, Inc."

## II

As a preliminary matter, we note that the appellant lists three assignments of error but fails to frame its arguments around these errors. Instead, it presents one "Argument and Law" section arguing that both the commission and the court of common pleas improperly found that Quad–K. had the requisite number of employees to vest jurisdiction pursuant to R.C. 4112.01. App.R. 12(A) provides that assignments of error that are not specifically pointed out in the record and separately argued by brief may be disregarded. As the appellant has sufficiently posed arguments which pertain to its second and third assignments of error, we will address these issues; however, nowhere within its brief has appellant given any substantive argument for its first assignment of error. For this reason, and pursuant to App.R. 12(A), we will disregard appellant's first assignment of error.

## A

Initially, appellant argues that neither the commission, the common pleas court, nor this court has jurisdiction over Giterman or Quad–K. As the determination of this question necessarily affects appellant's remaining arguments, we will address it first.

It is appellant's contention that Quad–K. is a "nonentity" and, therefore, the commission could not have had personal jurisdiction over it *ab initio*. For the following reasons, we find that appellant's argument is without merit.

Unlike subject matter jurisdiction, personal jurisdiction can be waived. Civ.R. 12(H). Civ.R. 12(B) requires that a defense of lack of personal jurisdiction

must be presented either in the defendant's answer or by a motion prior to the filing of the defendant's answer. *State Farm Fire & Cas. v. Kupanoff Imports* (1992), 83 Ohio App.3d 278, 281, 614 N.E.2d 1072, 1073–1074. In the present case, the appellant raises its "nonentity" question for the first time before this court.

■ Moreover, the underlying foundation for assertion of personal jurisdiction is "the presence of the person or thing involved in the litigation within the forum's territorial boundaries or the consent [express or implied] of the party." *McBride v. Coble Express, Inc.* (1993), 92 Ohio App.3d 505, 509, 636 N.E.2d 356, 359. In appellant's brief, it clearly states that Quad–K. "operated in a cramped Huron Road [in Cleveland, Ohio] warehouse office." In addition, we note that at all of the proceedings before the commission and the court of common pleas, the appellant was duly represented by counsel.

■ From these facts, we find that appellant has, either expressly or impliedly, consented to the jurisdiction of the commission. In addition, it has never, until now, contested the *personal* jurisdiction of the commission or court of common pleas, either by motion or otherwise.

Therefore, pursuant to Civ.R. 12(H) and *McBride, supra,* we find that the commission, the Cuyahoga County Court of Common Pleas and the present court can properly exercise personal jurisdiction over the appellant for purposes of the action herein.

## B

Having determined that this court has proper jurisdiction over this matter, we will now discuss appellant's arguments as presented to this court.

### 1

■ Appellant's main contention within its second and third assignments of error encompasses the question of whether the commission and the court of common pleas abused their discretion in applying the economic realities test set forth in *Armbruster, supra,* in order to reach their determinations that Quad–K. had the requisite number of employees to vest jurisdiction pursuant to R.C. 4112.01. The scope of this court's review of the trial court's judgment is limited to determining whether it abused its discretion in affirming the commission's order. See *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267–268. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. If there is "some

evidence" in the record to support the commission's decision, then it should be affirmed. *Pushay v. Walter* (1985), 18 Ohio St.3d 315, 316, 18 OBR 361, 361–363, 481 N.E.2d 575, 576–577.

As previously stated, both the commission and the court of common pleas applied the economic realities test of *Armbruster* to determine that Nehls, Cicigoi, Prough and Braddish were employees of Quad–K. However, appellant contends that Quad–K. had two employees during the time in question, Giterman and Nehls. It is appellant's contention that Cicigoi, Prough and Braddish were all independent contractors.

We recognize that R.C. Chapter 4112 gives little direction with regard to how the Ohio Civil Rights Commission and courts of Ohio should determine who is an employee for jurisdictional purposes. Appellant contends that this court should look to other Ohio statutes to determine whether the three people in question were employees or independent contractors. However, the Ohio Supreme Court has determined that it is proper to apply federal case law interpreting Title VII of the Civil Rights Act, Section 2000(e) *et seq.*, Title 42, U.S.Code, to cases involving alleged violations of R.C. Chapter 4112. *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.* (1994), 69 Ohio St.3d 89, 95, 630 N.E.2d 669, 673–674; *Plumbers & Steamfitters v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128.

■ Therefore, we find that the commission properly chose to apply the "economic realities test" defined in *Armbruster* in order to determine whether the three people in question were employees for purposes of R.C. 4112.01.

2

Appellant argues that the commission and the court of common pleas abused their discretion in finding that Quad–K. had "four or more persons" in its employment. R.C. 4112.01. The appellant argues that there was no evidence to support the commission's determination that Quad–K. had the required amount of employees.

Attached to its motion to dismiss, presented before both the commission and the court of common pleas, were the affidavits of Cicigoi, Prough and Braddish. Within their respective affidavits, each person clearly denied that he or she was ever an employee of Quad–K.; rather, they characterized their employment status as that of independent contractors. Moreover, all three stated that appellant did not provide any benefits or withhold any taxes or social security payments from their paychecks.

In addition to their affidavits, each of these people testified before hearing examiner Martens. Appellant contends that the fact that the individual parties

considered their relationship as that of an independent contractor is evidence that they should not be considered employees pursuant to R.C. 4112.01(A). However, *Armbruster,* 711 F.2d at 1340, stated as follows:

"Though the manner in which the parties view the relationship is *some* evidence as to whether the [person] will be deemed an 'employee' for Title VII purposes, it is not determinative of that question. Rather, one must examine the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate."

In applying the "economic realities" test, the *Armbruster* court indicated that future courts should be mindful of the liberal intent of Title VII. The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial; therefore, it should be given a liberal construction. *Armbruster, supra,* 711 F.2d at 1336. Analogous to Title VII, the Ohio statute in question, R.C. Chapter 4112., is a remedial law. See *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212. R.C. 1.11 provides for the method of construction courts should use in interpreting remedial laws. It states, in pertinent part, as follows:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice."

Similarly, the *Armbruster* court held that the word "employee" " ' " 'must be read in light of the mischief to be corrected and the end to be attained.' " ' " *Id.,* 711 F.2d at 1340, quoting *Dunlop v. Carriage Carpet Co.* (C.A.6, 1977), 548 F.2d 139, 145, quoting *NLRB v. Hearst Publications* (1944), 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170, 1184, quoting *S. Chicago Coal & Dock Co. v. Bassett* (1940), 309 U.S. 251, 259, 60 S.Ct. 544, 549, 84 L.Ed. 732, 737.

Therefore, we find that there existed sufficient evidence by which the commission could find that the relationship between appellant and Cicigoi, Prough and Braddish was that of employer/employee rather than independent contractor. Under a liberal construction of R.C. Chapter 4112, and following the direction of the *Armbruster* decision, we hold that the commission did not abuse its discretion in finding that appellant satisfied the definition of an "employer" under R.C. 4112.01(2).

Accordingly, appellant's second and third assignments of error are overruled.

The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and PATRICIA BLACKMON, J., concur.