DECISION AND JUDGMENT ENTRY
Terry Moody, Sr. ("Terry") appeals the Athens County Court of Common Pleas, Juvenile Division's award of permanent custody of his daughter, Thelma Moody, to Athens County Children Services ("ACCS.") Terry asserts that the case plan unlawfully required him to admit to sexually abusing his daughter, Thelma. Because we find that the case plan did not so require, we disagree. Terry next asserts that the trial court's finding, which was made after the permanent custody hearing, that Terry sexually abused Thelma violated his rights to due process and equal protection and violated R.C. 2151.414. Because we find that Terry received adequate notice and an opportunity to be heard and because we are not persuaded by his other arguments, we disagree. Terry also asserts that the trial court's decision was an abuse of discretion because it relied on findings of fact that were not supported by the trial transcript. Because we find that the trial court's findings of fact that are relevant to Terry are supported by some, competent, credible evidence, we disagree. Terry next argues that the trial court failed to find, as required by R.C.2151.414, that Thelma could not be placed with either of her parents within a reasonable time or should not be placed with either of her parents. We disagree, because the trial court was not required to make these findings under the version of R.C.2151.414 in effect at the time ACCS moved for permanent custody and at the time the trial court held the hearing on ACCS's motion for permanent custody. Terry finally argues that applying the version of R.C. 2151.414 in effect at the time ACCS filed its motion for permanent custody and at the time the trial court held the hearing on ACCS's motion for permanent custody is an application of an ex post facto law. We disagree because the prohibition of ex post facto laws applies only to criminal law and because Terry has waived this argument by not raising it in the trial court. Accordingly, we affirm the judgment of the trial court.
 I.
Thelma Moody was born in 1984 to Debbie Hook and her ex-husband, Terry Moody, Sr. About one month after Thelma was born, Hook's fifteen-year-old sister, Mary, gave birth to Terry's son. Mary is now Thelma's step-mother. Thelma has lived with her father and step-mother since she was three years old. Hook has continually suffered from mental illness, sometimes severe mental illness.
In December of 1997, Thelma reported to a school counselor that her father had raped her. She eventually alleged that her father had sexually abused her for approximately five years. ACCS immediately moved for an emergency order of custody of Thelma and her siblings that were living in Terry's household. The trial court granted ACCS's motion and eventually found Thelma to be an abused, neglected and dependent child and granted ACCS temporary custody of Thelma. The trial court did not issue any findings of fact and did not expressly identify Thelma's abuser when it found Thelma to be an abused, neglected and dependent child. The trial court also ordered Terry to have no contact with Thelma. This order remained in effect up until the current appeal.
Terry was indicted on charges that he raped Thelma, but a jury found him not guilty. During the jury trial, Terry testified that he did not ever sexually abuse Thelma.
In June 1999, ACCS moved for permanent custody of Thelma. Along with this motion, ACCS served a notice of the consequences of a grant of permanent custody. These documents summarized the statutory law in effect at the time ACCS filed its motion.
Thelma's guardian ad litem recommended that the trial court grant ACCS permanent custody of Thelma.
At the beginning of the permanent custody hearing, ACCS filed a motion seeking a finding that Terry Moody was the perpetrator of sexual abuse against Thelma. After the hearing, the trial court granted ACCS's motion for permanent custody and terminated the parental rights of Hook and Terry. The trial court also entered a decision overruling ACCS's motion that the trial court find that Terry was the perpetrator of Thelma's abuse because it had previously found, by operation of Juv.R. 29, that Terry was the abuser when it adjudicated Thelma to be an abused, dependent and neglected child. Upon request of the parties, the trial court issued findings of fact and conclusions of law. These findings of fact included a finding that Terry sexually abused Thelma.
Terry appeals and asserts the following assignments of error:
 I. In order to comply with the case plan and to be reunited with his daughter, father was required to expose himself to criminal prosecution.
 II. The Court's adjudication made at the commencement of state's motion for permanent custody and after adjudication and disposition that the father was the perpetrator of the sexual abuse against his daughter violated father's Consitution (sic) Rights to due process and equal protection of the law.
 III. The findings of fact filed by the Trial Court are not supported by the trial transcript resulting in the Court's decision being an abuse of discretion.
 IV. The Trial Court failed to make the findings required by Ohio Revised Code Section 2151.414.
 V. Relying on amended Ohio Revised Code Section 2151.414 (E) violated father (sic) Constitutional Rights to due process and equal protection of the law.
 VI. Relying on amended Ohio Revised Code Section 2151.414 (B) (1) (d) violated fathers (sic) Constitutional Rights to due process and equal protection of the Law (sic).
 II.
In his first assignment of error, Terry argues that the trial court, through ACCS's case plan, required him to expose himself to criminal prosecution for perjury for the court to reunite him with his daughter. He directs us to In re Amanda W. (1997),124 Ohio App.3d 136. In In re Amanda W., Amanda alleged that her father had sexually abused her. Amanda's parents admitted that someone had abused Amanda, but denied that the abuser was Amanda's father. Amanda's parents substantially complied with their case plans in almost all respects. However, their persistent denial that Amanda's father was her abuser caused the Lucas County Children Services to seek permanent custody of Amanda. The case plan required Amanda's father to admit that he abused Amanda. The Sixth District Court of Appeals held that a case plan that requires a parent to admit to a criminal act, without an offer of immunity for such an admission, violated the parents' fifth amendment rights to refrain from incriminating themselves.
In re Amanda W. is distinguishable from this case for two reasons. First, Thelma's case plan did not explicitly or implicitly require Terry to admit to sexually abusing her. Rather, the case plan required Terry to co-operate in the investigation of her allegations. Terry argues that he was required to admit to the abuse because in order to receive counseling he had to admit to abusing Thelma. The amended case plan required Terry to "seek counseling to deal with the allegations that he sexually abused Thelma, and also to deal with his past sexual abuse." The. trial court later ordered Terry to seek counseling for a myriad of issues, but did not mandate sex offender treatment. There was no evidence that Terry was required to admit to any crime in order to participate in these types of therapy. John Casey, a licensed counselor, testified that Terry was not amenable to sex offender treatment because he steadfastly denied sexually abusing Thelma. However, the case plan did not require that he successfully complete this type of therapy. Second, Terry, unlike Amanda W.'s parents, did not substantially comply with the remainder of the case plan. He never moved out of the family residence or co-operated in the investigation of Thelma's abuse.
Accordingly, we overrule Terry's first assignment of error.
 III.
In his second assignment of error, Terry argues that the trial court found, after the permanent custody hearing, that Terry was the perpetrator of the sex abuse for which the court had adjudicated Thelma an abused child. He then asserts that the trial court erred and violated his due process and equal protection rights by making this finding and by making it after the adjudicatory hearing and the hearing on permanent custody.
Terry asserts that the trial court's October 4, 1999 entry "clearly" violated his rights to due process and equal protection. However, he fails to. explain exactly how the trial court's entry does so.
Due process requires reasonable notice and an opportunity to be heard. Cleveland Bd. of Edn. v. Loudermill (1985), 470 U.S. 532;Ohio Assn. of Pub. School Emp., AFSCME, AFL-CIO v. Lakewood CitySchool Dist. Bd. of Edn. (1994), 68 Ohio St.3d 175. While Terry is correct that prior to the trial court's October 1999 entry, it had made no express finding that Terry sexually abused Thelma, it is abundantly clear from the record that Thelma had repeatedly accused Terry of raping her. At the permanent custody hearing, Terry was given an opportunity to present evidence concerning this issue and did so. Thus, Terry had constitutionally adequate notice that whether he sexually abused Thelma would be an issue at the hearing and had a constitutionally adequate opportunity to be heard. Thus, the trial court did not violate Terry's right to due process.
Terry next asserts that the trial court's October 1999 entry violated his right to equal protection. The Equal Protection Clauses of the Ohio and United States Constitutions prevent the state from invidiously discriminating against one classification in favor of a similarly situated classification. Andres v.Perrysburg (1988), 47 Ohio App.3d 51. If there is no fundamental right or suspect classification at issue, courts apply a rational basis level of scrutiny. Granzow v. Montgomery Cty. Bur. ofSupport (1990), 54 Ohio St.3d 35. Courts will uphold the state action at issue if it bears a rational relationship to a legitimate governmental interest. Fahnbulleh v. Strahan (1995),73 Ohio St.3d 666; Adamsky v. Buckeye School Dist. (1995),73 Ohio St.3d 360; Fabrey v. McDonald Village Police Dept. (1994),70 Ohio St.3d 351, 353. Terry provides no explanation of how the trial court's entry invidiously discriminates against one classification in favor of a similarly situated classification. Thus, we find that Terry has not shown that the trial court violated his right to equal protection.
Terry next asserts that R.C. 2151.414 (A) (1) prohibits the readjudication of the matters from the adjudication hearing, such as whether he sexually abused Thelma. R.C. 2151.414 (A) (1) provides, in part, that "[t]he adjudication that the child is an abused, neglected, or dependent child and the grant of temporary custody to the agency * * * shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody." Terry argues that allowing ACCS to relitigate the issue of Thelma's sexual abuse violates this provision. We disagree. We read this section as an attempt to emphasize that the permanent custody hearing should focus on whether the agency should receive permanent custody and to emphasize that the outcome of the. permanent custody hearing has no effect on the child's status as an abused, neglected or dependent child. We do not interpret this section as a prohibition of the introduction of evidence or matters that supported the trial court's initial adjudication. In this case, the fact that Thelma was adjudicated an abused, neglected and dependent child, did not prevent ACCS from establishing this abuse and the identity of the perpetrator in making its case for permanent custody. In fact, R.C. 2151.414
(D) requires the court to consider all relevant factors in determining if permanent custody to an agency is in the best interest of the child. We find that the identity of Thelma's abuser is such a relevant factor in this case, because of Thelma's mental health and need for a consistent family setting.
Therefore, we find that the trial court's determination that Terry sexually abused Thelma did not violate Terry's due process or equal protection rights and did not violate R.C. 2151.414 (A). Accordingly, we overrule his second assignment of error.
 IV.
In his third assignment of error, Terry asserts that several of the trial court's findings of fact are not supported by the trial transcript.
We will not disturb a trial court's findings of fact unless they are against the manifest weight of the evidence. See L.W.Shoemaker, M.D., Inc. v. Connor (1992), 81 Ohio App.3d 748. We will not reverse a finding of fact as against the manifest weight of the evidence if the finding is supported by some competent, credible evidence. Security Pacific Natl. Bank v. Roulette
(1986), 24 Ohio St.3d 17, 20.
He asserts that several of the trial court's findings of fact erroneously state or erroneously assume that Terry sexually abused Thelma. Competent, credible evidence supports the trial court's findings of fact that Terry sexually abused Thelma. In the trial court's in camera interview with Thelma, which was admitted into evidence at the permanent custody hearing, Thelma stated that she was telling the truth when she testified at the adjudicatory hearing. In this adjudicatory testimony, which was also introduced at the permanent custody hearing, Thelma testified that Terry raped her. Dr. Papi, a licensed clinical counselor, testified at the permanent custody hearing that Thelma has identified Terry as the perpetrator. Thus, the trial court's finding that Terry sexually abused Thelma and the findings that assume Terry sexually abused Thelma are not against the manifest weight of the evidence.
Terry next asserts that the trial court erred in finding that it had received a psychological assessment of Debbie Hook into evidence because, although it ordered such an assessment, no assessment took place. As Terry points out, this finding is not relevant to Terry's parental rights. Therefore, the error, if any, is harmless.
Accordingly, we overrule Terry's third assignment of error.
 V.
We combine our discussion of Terry's fourth, fifth, and sixth assignments of error because they are interrelated.
On March 18, 1999, Am.Sub.H.B. No. 484 ("HB 484") became effective and amended R.C. 2151.414. Prior to this amendment, a trial court could grant permanent custody of a child who had not been abandoned or orphaned only if doing so was in the best interest of the child and the trial court found that the child could not be placed with the parent within a reasonable time or should not be placed with the parent. After HB 484's amendments, a trial court may grant permanent custody of a child who has not been abandoned or orphaned to an agency if doing so is in the best interest of the child and the child has been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. See R.C. 2151.414 (B) (1) (d). If the child has not been in the agency's custody for the requisite period of time (and has. not been abandoned or orphaned), the trial court may grant permanent custody to the agency only if the child could not be placed with the parent within a reasonable time or should not be placed with the parent. R.C. 2151.414 (B) (1) (a). Thus, the trial court is required to determine whether the child could not be placed with the parent within a reasonable time or should not be placed with the parent only if the child is not abandoned, orphaned, or has not been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. R.C. 2151.414 (B) (1); R.C.2151.414 (B) (2).
We have previously held that the version of R.C. 2151.414 in effect when the motion for permanent custody was filed and when the permanent custody hearing was held, is applicable to permanent custody hearings. In re Bowers (Jan. 31, 2000), Athens App. No. 99CA15, unreported; In re Davis (Nov. 11, 1999), Pickaway App. Nos. 99CA20 99CA21, unreported. See, also, In reRodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported (when ruling on motion for permanent custody, court should usually apply version of statute in effect at time motion for permanent custody was filed).[2]
 A.
In his fourth assignment of error, Terry argues that the trial court was required to find that Thelma could not be placed with a parent within a reasonable time or should not be placed with a parent. We disagree. R.C. 2151.414 no longer requires such a finding if the court placed a child in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. The record indicates that ACCS removed Thelma from Terry's home on December 1, 1997. In June 1998, the trial court adjudicated her to be an abused, neglected, and dependent child. R.C. 2151.414 (B) (1) provides that for purposes of R.C. 2151.414
(B) (1), "a child is considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated * * * or the date that is sixty days after the removal of the child from home." Thus, Thelma entered the temporary custody of ACCS, for purposes of calculating the twelve month period, on January 30, 1998 (sixty days after ACCS removed Thelma from her home.) She remained in ACCS's temporary custody until the date of the permanent custody hearing, September 1, 1999. Thus, ACCS had temporary custody of Thelma for at least twelve months of the. consecutive twenty-two month period immediately preceding the permanent custody hearing. This period ended on September 1, 1999, which is after March 18, 1999.
In part of his sixth assignment of error, Terry seems to argue that the twenty-two month period referred to in 2151.414 (B) (1) begins when the agency seeking permanent custody first seeks any type of custody of the child. R.C. 2151.414 provides simply for a consecutive twenty-two month period ending on or after March 18, 1999." In construing a statute, we first look to the language of the statute. In re Hayes (1997), 79 Ohio St.3d 46, 48. If the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we need not resort to rules of statutory construction. L.J. Minor Corp. v. Breitenbach (1996), 77 Ohio St.3d 168,171. The plain language of this statute does not limit the beginning of the twenty-two month period to one that begins when the agency seeking permanent custody first sought custody. Thus, we will not add such a requirement to the statue [statute]. See,Cline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93, 97
(courts may not delete words used in a statute or insert words not used).
Accordingly, the trial court was not required to find that Thelma could not be placed with a parent within a reasonable time or should not be placed with. a parent. Thus, we overrule, Terry's fourth, and part of his sixth assignment of error.
 B.
In his fifth assignment of error, Terry argues that applying R.C. 2151.414, as amended by HB 454, violates the prohibition ofex post facto laws.
Initially we note that the Ex Post Facto clause, Section 10, Article I of the United States Constitution, applies only to criminal statutes. State v. Cook (1998), 83 Ohio St.3d 404, 415, citing California Dept. of Corrections v. Morales (1995),514 U.S. 499, 504. Moreover, we find that the trial court did not retroactively apply R.C. 2151.414, as amended by HB 454, to Terry. We normally apply the version of R.C. 2151.414 in effect at the time that the agency files for permanent custody. In reBowers, In re Davis, supra. Thus, we overrule Terry's fifth assignment of error.
 C.
In his sixth assignment of error, Terry also asserts that applying R.C. 2151.414, as amended by HB 454, to him violates his rights to due process and equal protection. However, he does not elaborate on this statement and produces no subtantive law to support this assertion. App.R. 12 (A) (2) allows an appellate court to disregard an assignment of error if the party raising it fails to argue the assignment in the brief. See Nehls v. Quad-K.Advertising, Inc. (1995), 106 Ohio App.3d 489. Thus, we overrule the remainder of Terry's sixth assignment of error.
 VII.
In sum, we overrule all of Terry's assignment of error, and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J.: Concur in Judgment and Opinion.
 _______________________________ Roger L. Kline, Presiding Judge
[2] We note that the Rodgers court held that retroactive application of HB 484's changes to R.C. 2151.414, which became effective after motion for permanent custody was filed, but before hearing, does not violate the prohibition against retroactive laws.