Troy SUBLETT, Plaintiff,

v.

EDGEWOOD UNIVERSAL CABLING
SYSTEMS, INC., et al.,
Defendants.

No. C–1–99–799.

United States District Court,
S.D. Ohio,
Western Division.

Jan. 19, 2002.

William A. Sherman, II, Dinsmore & Shohl, Cincinnati, OH, for plaintiff.

Mary Ann Stewart, James R. Kruer, Adams Stepner & Woltermann & Dusing, Covington, KY, for defendants.

### ORDER

BECKWITH, District Judge.

This matter comes before the Court on the motion for summary judgment filed by Defendants Edgewood Universal Cabling Systems, Inc. and Curtis Reasor (Doc. No. 13) and Plaintiff Troy Sublett's Motion for Leave to Respond to Defendant's Reply Memorandum in Support of Motion for Summary Judgment (Doc. No. 17). For the reasons set forth below, Defendants' motion for summary judgment is well-taken and is **GRANTED**; Plaintiff's motion for leave to respond is **MOOT**.

### I. *Background*

The Plaintiff in this case is Troy Sublett. Plaintiff is an African–American male and adherent of the Rastafarian religion. Plaintiff is also a citizen of the state of Ohio. Amended Complaint ¶¶ 1, 5. A tenet of Plaintiff's religion requires him to wear his hair in dreadlocks. *Id.* ¶ 6. The Defendants are Edgewood Universal Cabling Systems, Inc. ("Edgewood") and Curtis Reasor. Edgewood is a Kentucky corporation with its principal place of business in Kentucky. Defendant Reasor is also a citizen of the state of Kentucky and is an employee of Edgewood. *Id.* ¶¶ 2, 3; Answer ¶¶ 2, 3.

In November 1998, Plaintiff sought employment as a voice and data technician with Aerotek, Inc. ("Aerotek"), a temporary employment agency. A couple of days after he submitted an application, Aerotek informed Plaintiff that a job as a cable installer was available with Edgewood. On the first day, Plaintiff reported to Aerotek's offices in Blue Ash, Ohio and was then directed to report to an Edgewood project at Tri–County Mall. Plaintiff worked at that site for a couple of days, after which Edgewood directed him to report to a job site on Plum Street in Cincinnati. At this time, Plaintiff's dreadlocks were approximately shoulder length.

Plaintiff says that on the morning of his second day at the Plum Street site, Defendant Reasor called him away from his work and into a hallway to speak with him. According to Plaintiff, Reasor stated that

he had received a complaint about Plaintiff's job performance. Furthermore, Reasor told Plaintiff that he looked "radical", that he stood out, and that he needed to look like and act like the other African–American worker (also a temporary employee from Aerotek). Reasor then asked Plaintiff if he went to church and whether he had been saved. Plaintiff responded that his hair was a part of his religion and that his looks had nothing to do with his job performance. Reasor, however, continued his critique of Plaintiff's hair, saying that those "dread things" were unacceptable, that he (Reasor) had to look out for the best interests of the company, and that Plaintiff would not go anywhere with the company or in his field of work due to his looks. According to Plaintiff, the only incident lasted twenty to thirty minutes and ended with Reasor saying that he might let Plaintiff finish out the day. Plaint.Dep.Vol. II, at 17–24, 30.

During the lunch hour, Plaintiff reported the incident to his placement person at Aerotek, Carl. According to Plaintiff, Carl told him that Reasor's behavior was unacceptable and that he did not have to stay there for that kind of abuse. Plaintiff went home after his conversation with Carl and never went back to work on an Edgewood project nor did he ever accept another job assignment from Aerotek. Plaintiff had a follow-up meeting on the incident with representatives from Aerotek but a resolution was never reached. *Id.* at 27–38.

Plaintiff filed a complaint for racial and religious discrimination with the Ohio Civil Rights Commission and received a right to sue letter on June 30, 1999. Amended Complaint Ex. A. On September 28, 1999, Plaintiff filed a two count complaint against the Defendants for racial and religious discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the Ohio Civil Rights

Act, Ohio Revised Code Chapter 4112. Plaintiff filed an Amended Complaint on October 13, 1999 asserting essentially the same claims. *See* Doc. No. 3. The Amended Complaint clearly alleges that Defendants discharged Plaintiff due to his race and religion. What is not so clear, but unapparently undisputed by the parties, is that Plaintiff also alleges that Defendants subjected him to a racially and religiously hostile environment.

On November 8, 2000, Defendants filed a motion for summary judgment as to all of Plaintiff's claims. In their motion, Defendants argue that summary judgment in their favor is appropriate because: 1) Edgewood is not an "employer" within the meaning of Title VII because it employs less than 15 people; 2) Plaintiff is not an "employee" within the meaning of Title VII and the Ohio Civil Rights Act because he was an independent contractor employed by Aerotek; 3) Reasor can not be held liable because neither Title VII nor the Ohio Civil Rights Act imposes liability on individuals; 4) Edgewood is not an "employer" within the meaning of the Ohio Civil Rights Act because it does not employ four people within the state of Ohio; 5) the alleged hostile environment was neither severe nor pervasive; 6) Plaintiff suffered no adverse employment action; and 7) Plaintiff does not hold a sincere belief in Rastafarianism.

## II. *Standard of Review*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit

of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 472, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56© ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment

"with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. *Analysis*

The Court addresses Defendants' arguments more or less seriatim.

#### A. *Whether Edgewood is an Employer*

■ As noted above, Defendants argue that summary judgment in Edgewood's favor is appropriate because it is not an "employer" within the meaning of Title VII or the Ohio Civil Rights Act. Under Title VII, an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). Under the Ohio Civil Rights Act, an "employer" is "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." Ohio Rev.Code § 4112.01(A)(2).

Edgewood argues that it is not an employer within the meaning of Title VII because it employs less than 15 people. In support of this argument, Edgewood submits the affidavit of Edgewood President Mark Goetz, who states that Edgewood employed five people in November 1998 and employed 13 people in October 1999. *See* Doc. No. 13, Goetz Aff.Ex. Edgewood argues that it is not an employer within the meaning of the Ohio Civil Rights Act because, as a Kentucky corporation, it did not employ four people within the state of Ohio. Edgewood discounts the fact that it had employees working in job sites in Ohio, analogizing that situation to one where a law firm with offices in Ohio only sends lawyers to the courts of Kentucky to cover motions. In that situation, Edgewood argues, the law firm would not be considered a Kentucky employer. Plaintiff's position is something of a syllogism which goes as follows: 1) even though he was a temporary employee of Edgewood, he qualifies as an "employee" under Title VII; 2) Defendant Reasor testified that Edgewood has employed "numerous" temporary employees over the course of its existence; 3) therefore, there is an genuine issue of fact as to whether Edgewood employed the requisite number of employees for purposes of Title VII. Plaintiff then employs the same analysis with respect to the definition of employer under the Ohio Civil Rights Act.

Whether or not Plaintiff was an employee or an independent contractor of Edgewood, or whether temporary employees count as "employees" under Title VII, the Court finds that Plaintiff has not created a genuine issue of fact as to whether Edgewood was a Title VII "employer." As the statute indicates, not only must the employer have employed 15 or more employees in order to qualify as an "employer", it also must have employed 15 or more employees for each working day in 20 or more calendar weeks. Goetz's affidavit establishes that Edgewood employs less than 15 people. However, even counting temporary employees as "employees", as Plaintiff suggests is proper, Reasor's testimony that Edgewood employed "numerous" temporary employees over the course of its existence does not create a jury question because "numerous" does not establish that Edgewood employed 15 persons for each working day for 20 work weeks. For instance, Edgewood could have employed 100 temporary employees, a fairly numerous amount, for nineteen weeks during the year without qualifying as an "employer" as long as the number of employees remained below 15 for the remaining 33 weeks of the year. *See Walters v. Metropolitan Educ. Ent., Inc.,* 519 U.S. 202, 212, 117 S.Ct. 660, 136 L.Ed.2d

644 (1997) ("[T]he ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question."). Therefore, the Court concludes that Plaintiff has failed to demonstrate that Edgewood is an "employer" within the meaning of Title VII. Accordingly, Edgewood's motion for summary judgment on Plaintiff's Title VII claims for race and religious discrimination is well-taken and is **GRANTED.** Plaintiff's Title VII claims against Edgewood are **DISMISSED WITH PREJUDICE.**

■ The next question is whether Edgewood is an "employer" within the meaning of the Ohio Civil Rights Act. Ohio law requires the employer to employ only four persons to qualify, and, unlike § 2000e(b) does not require employment of the persons for a particular length of time. The Court's own research has not located any Ohio case law addressing the issue of when an out-of-state corporation is considered to be an employer for purposes of Chapter 4112. In a somewhat relevant case, the Ohio Court of Appeals held that § 4112.01(A)(2) requires only that the employer must have four employees at the time the discrimination occurred. *Cisneros v. Birck,* No. 94APE08–1255, 1995 WL 222156, at *5 (Ohio Ct.App. Apr. 11, 1995). In that case, though, the defendant/employer was clearly an Ohio corporation whose employees worked in Ohio. The Supreme Court of Ohio has stated, however, that § 4112.01(A)(2) is more broad and encompassing than Title VII's definition of employer, *Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 703 N.E.2d 782, 787–88 (1999) and recent decisions evince an intent on the part of the Court to bring as many persons or entities within its ambit as is possible. *See id.* at 787–88 (holding that individual supervisors and managers may be held jointly and/or severally responsible for their own discriminatory conduct under the Ohio Civil Rights Act); *Cheek v. Industrial Powder Coatings, Inc.,* 84 Ohio St.3d 534, 706 N.E.2d 323, 323 (1999) (holding that individual employees who are not otherwise employers under the statute may be held individually liable for their own discriminatory conduct under the Ohio Civil Rights Act). Therefore, the Court believes that the Ohio Supreme Court would hold that an out-of-state corporation who has four employees working within the state at the time the alleged discrimination occurred is an "employer" within the meaning of the Ohio Civil Rights Act. This conclusion is further supported by the Supreme Court's statement in *Genaro* that:

> This court has noted in numerous cases the existence of a strong public policy against discrimination. A majority of this court have, time and time again, found that there is no place in this state for any sort of discrimination no matter its size, shape, or form or in what clothes it might masquerade. This, of course, includes discrimination in the workplace.

*See Genaro,* 703 N.E.2d at 785. This strong public policy would be subverted if a company were able to set up shop just outside of Ohio's border, send workers into Ohio to work at various job sites and yet escape liability from the anti-discrimination laws by claiming not to be an Ohio employer. The Court does not believe that the Ohio Supreme Court would permit such a result.

■ Therefore, the question remaining is whether Edgewood employed four employees in Ohio at the time of the alleged discrimination. *Cisneros,* 1995 WL 222156, at *5. Plaintiff's deposition establishes that Edgewood potentially had four employees working in Ohio on the day in question—Plaintiff, the other temporary employee from Aerotek, Defendant Reasor, and the Edgewood supervisor from

the Tri–County Mall project. *See* Plaint. Dep.Vol. II, at 14, 19, 25. In turn, resolution of this question turns on whether Plaintiff and the other temporary employee were "employees" or independent contractors, a question which the Court resolves below. At a minimum, however, there is a genuine issue of material fact as to whether Edgewood is an "employer" under the Ohio Civil Rights Act. Accordingly, Edgewood's motion for summary judgment on Plaintiff's state law claims on the grounds that it is not an employer is not well-taken and is **DENIED.**

Plaintiff filed a motion to respond to Defendants' reply brief (Doc. No. 17) on the grounds that Defendants raised new arguments on whether it is an "employer" in that pleading. However, because Plaintiff has prevailed on this issue, the motion to file a supplemental brief is **MOOT.**

### B. *Individual Liability*

■ Defendant Reasor moves for summary judgment on Plaintiff's claims on the grounds that neither Title VII nor the Ohio Civil Rights Act imposes liability on individuals who are not otherwise employers. Defendant is correct that Title VII does not impose liability on individuals. *See Wathen v. General Elec. Co.,* 115 F.3d 400, 406 (6th Cir.1997). There has been no showing that Defendant Reasor otherwise qualifies as an "employer" under Title VII, therefore, he cannot be held individually liable. Accordingly, Defendant Reasor's motion for summary judgment on Plaintiff's Title VII claims is well-taken and is **GRANTED.** Plaintiff's Title VII claims against Defendant Reasor are **DISMISSED WITH PREJUDICE.**[1]

■ The same is not true, however, with respect to Plaintiff's state law claims against Defendant Reasor. As alluded to above, not only does the Ohio Civil Rights Act hold individual managers and supervisors liable for their discriminatory conduct, *Genaro,* 703 N.E.2d at 787–88, it also makes individual employees liable as well. *Cheek,* 706 N.E.2d at 323. Accordingly, Defendant Reasor's motion for summary judgment on Plaintiff's state law claims on the grounds that the Ohio Civil Rights Act does not impose individual liability is not well-taken and is **DENIED.**

### C. *Employee v. Independent Contractor*

■ Edgewood contends that it cannot be held liable under the Ohio discrimination statute because Plaintiff was an independent contractor and, therefore, had no employment relationship with it. The Ohio statute provides:

> It shall be an unlawful discriminatory practice . . . [f]or any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev.Code. § 4112.02(A). Section 4112.01 provides that " 'Employee' means an individual employed by any employer but does not include any individual employed in the domestic service of any person." Ohio Rev.Code § 4112.01(A)(3).[2] The issue of a person's employment status

---

1. Even though the Court has now dismissed all of Plaintiff's federal claims, the Court retains subject matter jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1332 because this lawsuit is between citizens of different states and the amount in controversy in more than $100,000.

2. The Court observes at this time that § 4112.02(A) makes it illegal to discriminate against a "person" and not an "employee". It therefore could be argued that a person need not be an "employee" of an "employer" in order for the employer to be held liable for an unlawful employment practice. Thus, under

presents a mixed question of law and fact. *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n. 1 (6th Cir.1992). In the absence of a genuine issue of material fact, however, the district court may decide the issue as a matter of law. *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir.1996). Furthermore, in ascertaining an employee's employment status under Ohio law, it is appropriate for the trial court to turn to the Sixth Circuit's Title VII case law on the subject for guidance. *See Nehls v. Quad–K Advertising, Inc.*, 106 Ohio App.3d 489, 666 N.E.2d 579, 583 (1995).

Although the Sixth Circuit has stated in dicta that Title VII does not cover independent contractors, *Falls v. The Sporting News Pub. Co.*, 834 F.2d 611, 613 (6th Cir.1988), the Court apparently eschews labeling persons as "employees" or "independent contractors". Rather, in determining whether a person is covered by Title VII, the Sixth Circuit employs the "economic realities" test in which the court "examine[s] the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate." *Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir.1983). Some of the factors for consideration under the economic realities test include the hiring and firing processes, payment and benefit policies, and opportunities for advancement. *Id.* at 1342 n. 9. The most important factor, however, is the employer's ability to control the job performance and employment opportunities of the plaintiff. *Eyerman v. Mary Kay Cosmetics*, 967 F.2d 213, 218–19 (6th Cir.1992). Similarly, the Court has stated that "a plaintiff is protected if the defendant is one 'who significantly affects access of any individual to employment opportunities.'" *Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 875 (6th Cir.1991) (citing *Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 422–25 (7th Cir.1986)). The Court observes that these factors overlap to some degree with those set forth in the Restatement (Second) of Agency for determining whether a person is an employee or an independent contractor. *See* Restatement (Second) of Agency § 220 (1958).[3] Thus, the Court finds that

that interpretation, it makes no difference whether the "person" is an "employee" or an independent contractor in terms of bringing the employer within the scope of the statute's coverage. Both parties, however, appear to assume that a plaintiff must have been an "employee" of an "employer" in order to hold the employer liable for discrimination under the statute. Because the parties have framed the issue in that fashion, the Court will make that assumption as well.

3. The Restatement provides:

In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*See id.*

the Restatement factors provide some useful guidance as well.

The Court now turns to some of the undisputed facts surrounding Plaintiff's employment situation. The contract between Aerotek and Edgewood indicates that the workers provided by Aerotek to Edgewood were independent contractors. *See* Doc. No. 13, Ex. 1, Service Agreement § 3. This same section also provides that Aerotek paid all the salary and benefits of the worker, was responsible for the worker's tax, social security, Medicare and other withholding deductions, and paid for worker's compensation coverage and unemployment taxes. *Id.* The degree to which Edgewood controlled Plaintiff's performance is unknown. The Court would assume, however, that cable installation does not take a great deal of hands-on supervision. With respect to the hiring and firing processes, the Court notes that the Service Agreement did not give Edgewood the right to terminate Plaintiff's employment contract with Aerotek. Edgewood could, however, terminate the Service Agreement if it was dissatisfied with Plaintiff's performance. *See id.* § 10. Although the contract had a restrictive covenant which prevented Edgewood from hiring Plaintiff as a full-time employee within six months after his final day with Aerotek, it also provided that Aerotek could waive the restriction upon payment of a fee by Edgewood, or without a fee if Plaintiff had worked for Edgewood for six months. *Id.* §§ 9.1. & 9.2. Finally, although Edgewood directed where Plaintiff would work, the Court notes that an employee of Aerotek gave Plaintiff permission to leave the worksite after the incident.

The question now is, in consideration of the above undisputed facts, whether Plaintiff was an individual "likely to be susceptible to the discriminatory practices which the act was designed to eliminate." *Armbruster*, 711 F.2d at 1339. The factors enumerated tend to weigh equally both ways. Though a close call, the Court finds that Plaintiff was an individual susceptible to discriminatory practices. As noted above, the most important factor is the defendant's ability to control access to employment opportunities. Although it is apparently true, as Defendants contend, that Plaintiff could have accepted other temporary positions through Aerotek, the effect of Edgewood's alleged discrimination was to prevent Plaintiff from ever securing a full-time position with Edgewood. Indeed, Reasor told Plaintiff that he would never get anywhere with Edgewood looking like he did.[4] In this regard, this case is similar to *Stouder*, in which the Court held that the plaintiff was protected by Title VII even though she was not an employee of the hospital because the hospital's discriminatory practices prevented her from engaging in her profession as a private scrub nurse for other doctors at the hospital. *See Stouder*, 936 F.2d at 876. Because the goal of discrimination statutes is to preserve employment opportunity, *id.*, and Defendants' alleged discrimination interfered with Plaintiff's opportunity to obtain full-time employment with Edgewood, the Court finds that Plaintiff is an "employee" for purposes of the Ohio Civil Rights Act.

Accordingly, Defendants' motion for summary judgment on the grounds that Plaintiff was not an employee of Edgewood is not well-taken and is **DENIED**.

D. *Racial and Religious Discrimination*

Plaintiff claims that Defendants discriminated against him on the basis of race and religion. On the merits of the

---

4. The Court notes that Defendants do not claim that Plaintiff's appearance was a qualification for the job.

case, Defendants argue that summary judgment in their favor is appropriate because Plaintiff never suffered any adverse employment action at their hands. Defendants contend that Plaintiff was not terminated and that the decision to end his employment with Edgewood was purely his own. Claims of discrimination brought pursuant to the Ohio Civil Rights Act are subject to the same evidentiary standards as Title VII claims. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992).

A plaintiff may establish a prima facie case of discrimination through either direct evidence or circumstantial evidence. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1081 (6th Cir.1994). If the plaintiff presents direct evidence that the employer discriminated against him on the basis of a protected characteristic, the burden of persuasion shifts to the employer who then must show that it would have taken the same action even without the discriminatory motivation. *Id.*

In the absence of direct evidence of discrimination, the plaintiff may establish a prima facie case of discrimination through the familiar *McDonnell Douglas* burden shifting framework. *Id.* Under this method, the plaintiff establishes a prima facie case of discrimination by showing: 1) he is a member of a protected class; 2) he suffered adverse employment action; 3) he was qualified for the job lost or not gained; and 4) that a person not within the protected class replaced or was selected over him. *Id.* A plaintiff may also satisfy the last part of the *McDonnell Douglas* test by showing that the defendant treated similarly-situated, non-protected persons more favorably than the plaintiff. *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995). Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to proffer legitimate non-discriminatory reasons for its ac-

tions. *Manzer,* 29 F.3d at 1080. "[F]or a reason to be 'legitimate,' in the sense of sufficient to rebut a prima facie case, it need not be a good or sympathetic justification for what the employer did; it need only be nondiscriminatory and ... explain why the challenged action was taken." *Timm v. Mead Corp.,* 32 F.3d 273, 275 (7th Cir.1994). If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant for its actions are but a pretext for discrimination. *Id.* However, the burden of persuasion remains with the plaintiff at all times. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■■■■■ Defendants contend that Plaintiff cannot establish a prima facie case of discrimination because there was no adverse employment action. The Court agrees. A tangible employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In this case, although Reasor allegedly told Plaintiff he would never make it with the company looking like he did and that he might let Plaintiff finish the day, it is undisputed that Reasor never dismissed Plaintiff or ordered him off of the worksite. Indeed, Plaintiff went back to work after his confrontation with Reasor and it was not until after his discussion with the Aerotek representative that Plaintiff decided, on his own, to leave work. There is no evidence that Edgewood sought to terminate the Service Agreement with Aerotek because of Plaintiff's appearance or performance. Furthermore, it was Plaintiff's decision not to return to work with Edge-

wood and his decision whether or not to accept any other assignments from Aerotek. Plaintiff does not contend that the confrontation with Reasor amounted to a constructive discharge,[5] nor under the circumstances does the Court believe that a juror could so find.

The Court concludes that Plaintiff has failed to create a genuine issue of material fact on the issue of adverse employment action. Thus, Plaintiff has failed to establish a prima facie case of racial and/or religious discrimination. Accordingly, Defendants' motion for summary judgment as to Plaintiff's state law discrimination claims is well-taken and is **GRANTED.**

### E. Hostile Environment

■ Although not apparent from the Amended Complaint, the parties appear to agree that Plaintiff asserts claims that he was subject to a racially and religiously hostile environment. Defendants contend that summary judgment in their favor on Plaintiff's hostile environment claims is appropriate because the confrontation with Reasor was a random, isolated event which is insufficient to create a hostile environment. Plaintiff argues that the incident with Reasor was more than just an isolated incident because Reasor allegedly berated him at length about his hair and religious practices.

■ Ohio also recognizes claims for a discriminatorily hostile environment. In order to establish a prima facie hostile environment case, the plaintiff must show: 1) that he was subjected to unwelcome harassment; 2) that the harassment was based on race or religion; 3) the harassing conduct was sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment, or any matter related to employment; and 4) that either the

harassment was committed by a supervisor or that the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Hampel v. Food Ingredients Specialties, Inc.,* 89 Ohio St.3d 169, 729 N.E.2d 726, 732–33 (2000). The Court agrees with Defendants that this single incident with Reasor was insufficient as a matter of law to alter the terms and conditions of Plaintiff's employment.

There is no per se rule that a single incident of harassment can never constitute a hostile environment. *See Brooks v. City of San Mateo,* 229 F.3d 917, 925–926 (9th Cir.2000). The seriousness of the conduct sufficient to create a hostile environment varies inversely with the pervasiveness or frequency of the conduct. *Id.* at 926. Therefore, for a single incident to constitute a hostile environment, the incident must be extremely severe. *Id.* at 926; *see also* EEOC, Policy Guidance on Sexual Harassment, 8 BNA FEP Manual 405:6690–91 (Mar. 19, 1990) ("[A] single unusually severe incident of harassment may be sufficient to constitute a Title VII violation; the more severe the harassment, the less need to show a repetitive series of incidents. This is particularly true when the harassment is physical.").

In this case, the single incident with Reasor lacks the requisite severity to support a hostile environment claim. There was no physical contact and Reasor did not use any racial or religious epithets. It is not even clear from Plaintiff's deposition whether Reasor was shouting or whether he used a normal tone of voice. There are a number of cases, including *Brooks,* where much more egregious behavior was insufficient to constitute a hostile environment. In *Brooks,* the Court held that a

---

**5.** A constructive discharge occurs when working conditions are so difficult or unpleasant that a reasonable person in the employee's

shoes would have felt compelled to resign. *Yates v. Avco Corp.,* 819 F.2d 630, 636 (6th Cir.1987).

single incident was insufficient to constitute a hostile environment even though the plaintiff's harasser boxed her into her work station and fondled her breasts and in fact was later jailed for four months for sexual assault. *Brooks*, 229 F.3d at 926. In *Burnett v. Tyco Corp.*, 203 F.3d 980, 984 (6th Cir.2000), the Court found that three incidents of sexual harassment, one involving unwelcome touching, over a six month period were insufficient as a matter of law to create a hostile environment. In *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir.1997), the plaintiff was subjected to discriminatory comments twice a week for four months, and yet that was insufficient to create a hostile environment. *Id.* at 826. In *Hafford v. Seidner*, 183 F.3d 506 (6th Cir.1999), the Court held that the plaintiff, a prison guard, was not subjected to a religiously hostile environment because of his Muslim faith even though his supervisor accused him of preparing for a holy war, the warden mocked the Muslim greeting, and a captain told the plaintiff that his religion taught him to hate white people. *Id.* at 513. The conduct complained of in this case, even if it did occur over the course of a half hour, was much less severe and much less pervasive than that which the above cases have held was insufficient to create a hostile environment. Therefore, the Court holds as a matter of law that Plaintiff was not subjected to a racially or religiously hostile environment.

Accordingly, Defendants' motion for summary judgment on Plaintiff's hostile environment claims arising under Ohio law is well-taken and is **GRANTED**. Those claims are **DISMISSED WITH PREJUDICE.**

### Conclusion

In conclusion, Defendants' motion for summary judgment (Doc. No. 13) is well-taken and is **GRANTED**. Plaintiff's claims, therefore, are **DISMISSED WITH** PREJUDICE. Plaintiff's motion for leave to respond (Doc. No. 17) is **MOOT.**

**IT IS SO ORDERED**